Filed 6/3/25  In re J.P. CA2/6

## **NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION SIX

| | |
|---|---|
| In re J.P., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B343849 (Super. Ct. No. J073611) (Ventura County) |
| S.P., Petitioner, v. THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA, Respondent; VENTURA COUNTY HUMAN SERVICES AGENCY, Real Party in Interest. | |

S.P. (Mother) petitions for extraordinary writ (Cal. Rules of Court, rules 8.452, 8.456), challenging the juvenile court's orders

bypassing family reunification services as to her son J.P. under Welfare and Institutions Code[1] section 361.5, subdivision (b)(6) and setting a selection and implementation hearing. (§ 366.26.) She requests we vacate the hearing and order the court to offer her reunification services, or, in the alternative, order a new trial on jurisdiction and disposition. She contends the Ventura County Human Services Agency (Agency) did not prove by clear and convincing evidence J.P. would not benefit from receiving services. (§ 361.5, subd. (b)(6)(A).)

We conclude substantial evidence supports the bypass order and will deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

*Mother Adopts J.P.*

Mother and L.B. began an on-again, off-again relationship when they were 12 years old. They have an adult daughter named L.B.P. and children from other relationships as well. L.B. had a son in 2021 with a woman who used amphetamines, fentanyl, and cannabis during her pregnancy. Both were incarcerated when J.P. was born. A juvenile court in Los Angeles terminated their parental rights and placed J.P. with Mother. She adopted him in 2023.

Mother rekindled her relationship with L.B. after the adoption. He lived in the Simi Valley apartment she shared with J.P. and her four minor children, who ranged in age from 10 to 16. Mother's and L.B.'s adult daughter, L.B.P., lived down the street and helped take care of her five siblings.

---

[1] All further statutory references are to the Welfare and Institutions Code unless stated otherwise.

2

*The Shooting*

Police responded to reports of screaming from Mother's apartment in the early hours of November 27, 2024. The officers found the four children outside. They reported hearing a gunshot while Mother and L.B. were arguing in their room. J.P. (now three years old) was in the room with his parents. Officers then saw Mother come to the front door of the apartment with blood on her hands. She said L.B. shot himself and needed an ambulance. J.P. then emerged with blood on his face and clothes.

Officers found L.B. unconscious in the master bedroom with a gunshot wound to his neck and a puncture wound on his mid-back. They found a pistol behind a shoe rack in the closet, a large black knife underneath L.B.'s body, and several other knives scattered on the floor. Blood was pooled and splattered around the room. Officers applied a chest seal to his back. Paramedics and firefighters arrived and performed lifesaving measures before taking him to the hospital. L.B. survived but remained hospitalized with partial paralysis and breathing difficulty as of late December of 2024.

*Mother's Account*

Mother told social workers she bought a Beretta pistol because she was concerned for her safety as a single mother. She kept it in her closet. The night of the shooting, J.P was sleeping in a toddler bed in the master bedroom. She and L.B. began arguing after he accused her of cheating on him. L.B. came out of the bathroom wearing a fanny pack containing her pistol. Mother did not know how or when he retrieved it from the closet. She tried to yank the pistol from him and it fired.

*The Children's Account*

Mother's four older children gave generally consistent accounts of the shooting to social workers. They heard Mother

3

and L.B. arguing loudly throughout the night about L.B. cheating on Mother.  The two oldest children knocked on the master bedroom door in the early morning hours when they heard banging and glass breaking.  They asked to take J.P. out of the room but Mother told them to go back to sleep.  The door then opened and J.P came running out of the room crying.  One of the boys took J.P. to his bedroom and began setting up a video for him to watch.  Mother retrieved J.P., returned to the master bedroom, and locked the door behind her.

The arguing resumed.  The two oldest children heard L.B. ask mother something like "[t]his is what you are doing?' or "[w]hy would you do this?"  He said he was taking his son and leaving.  All four children then heard a sound like a gunshot from the room.  J.P stopped crying.  Mother yelled, "Everything is fine" but would not open the door.  They could hear L.B. saying "I can't breathe."

*Criminal Charges Against Mother*

Prosecutors charged Mother with attempted murder but later dismissed this count.  (Pen. Code, §§ 664/184, subd. (a).)  The court released her on her own recognizance on December 20, 2024.  She was later held to answer on charges of felony assault with a deadly weapon (*id.*, § 245, subd. (a)(1)) and felony child endangerment (*id.*, § 273a, subd. (a)).  Each charge includes an enhancement for committing a felony while on bail.

*The Agency Detains J.P. and His Siblings*

The Agency detained J.P. and placed him in the care of L.B.P.  It placed the four older children with their respective fathers, both of whom lived locally and already shared custody with Mother.  The Agency filed a dependency petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (b)(1)(A).  It alleged that Mother's assault on L.B. in the presence

4

of J.P. placed the boy at substantial risk of abuse or neglect. Mother contested the petition. She invoked her Fifth Amendment right against self-incrimination and the court granted a no-contact order at her request.

*Mother Denied Reunification Services*

The juvenile court held a contested jurisdiction and disposition hearing on February 4, 2025. The Agency recommended bypassing reunification services as to J.P considering the severity of the events on November 27. (§ 361.5, subd. (b)(6).) His caretaker noted signs of emotional trauma, such as waking in the night crying and screaming inconsolably. Mother's need for services was not known because of the court's no-contact order. J.P.'s current caretaker, L.B.P., agreed to permanent placement. The Agency requested an order authorizing J.P.'s treatment for "rampant dental decay penetrating the nerves." Minor's counsel agreed with the Agency's recommendations.

Mother argued the Agency failed to prove both its jurisdictional allegations or grounds for bypassing services. She described her household as safe and stable, with no prior pattern of criminality, substance abuse, or domestic violence. She noted prosecutors had dismissed the attempted murder charge and released her on her own recognizance. J.P.'s alleged signs of emotional trauma with his caretaker, she argued, could also be attributed to his pre-existing epilepsy or his separation from Mother. Social workers otherwise described him as energetic, bubbly, and with no "signs of distress." There was no evidence she could not engage meaningfully in services or provide J.P. with a stable living environment within 12 months.

The juvenile court sustained the Agency's allegations and declared J.P. a dependent. It found the Agency proved grounds

5

for bypass, and, further, that Mother did not show reunification services were in J.P's best interest.  (§ 361.5, subds. (b)(6) & (c).)  The court set a selection and implementation hearing with a plan of adoption for May 28, 2025.  (§ 366.26.)

DISCUSSION

*Bypass of Reunification Services*

"Section 361.5, subdivision (a) directs the juvenile court to order services whenever a child is removed from the custody of his or her parent unless the case falls within one of the enumerated exceptions of section 361.5, subdivision (b)."  (*Jose O. v. Superior Court* (2008) 169 Cal.App.4th 703, 706 (*Jose O.*).)  Subdivision (b) provides:  "Reunification services need not be provided to a parent or guardian . . . when the court finds, by clear and convincing evidence, any of the following:  [¶] (6)(A) That the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of . . . the infliction of severe physical harm to the child, . . . and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian."

"A finding of the infliction of severe physical harm . . . may be based on . . . any . . . torturous act or omission that would be reasonably understood to cause serious emotional damage."  (§ 361.5, subd. (b)(6)(C).)  "When determining whether the child would benefit from reunification services, the statute requires the court to consider the following factors, as well as any other circumstances it deems relevant:  (1) the 'specific act or omission' that caused the severe physical harm; (2) the 'circumstances under which' the harm was inflicted; (3) the 'severity of the emotional trauma' the harm caused; (4) any 'history of abuse of other children by the offending parent'; (5) the likelihood the child may be safely returned to the care of the offending parent

6

within 12 months with no continuing supervision; and (6) whether 'the child desires to be reunified with the offending parent.'" (*In re T.R.* (2023) 87 Cal.App.5th 1140, 1149, quoting § 361.5, subd. (i) (*T.R.*).)

"If the court finds by clear and convincing evidence that a bypass provision applies, it must deny services unless the parent proves that services would be in the child's best interests. (§ 361.5, subd. (c).) While the parent bears the burden of proof on that issue, the department bears the burden of proving the threshold issue of whether a bypass provision applies." (*T.R.*, *supra*, 87 Cal.App.5th at p. 1148.) "The court shall read into the record the basis for a finding of . . . severe physical harm under paragraph (6) of subdivision (b), and shall also specify the factual findings used to determine that the provision of reunification services to the offending parent or guardian would not benefit the child." (§ 361.5, subd. (k).)

We review an order bypassing reunification services for substantial evidence. (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1121.) Thus, we review the entire record most favorably to the juvenile court's findings to determine if substantial evidence supports the findings. (*Id.* at p. 1122.) We do not make credibility determinations or reweigh the evidence. (*Id.* at p. 1121.) "We do not inquire whether substantial evidence would have supported a different order, nor do we reweigh the evidence and substitute our judgment for that of the juvenile court." (*In re Matthew M.* (2023) 88 Cal.App.5th 1186, 1195.) "When the clear and convincing evidence standard of proof applied in the juvenile court to the challenged finding, we must 'account for' that heightened standard by determining whether 'the record as a whole contains substantial evidence from which a reasonable fact finder could have found it *highly probable* the fact

7

was true.'" (*T.R.*, *supra*, 87 Cal.App.5th at p. 1150, quoting *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

*Substantial Evidence Supports Bypassing*
*Reunification Services*

Mother contends the juvenile court misapplied section 361.5 when it bypassed reunification services. We disagree and conclude substantial evidence supports the order.

The Agency bore the initial burden to prove the two requirements for bypassing services under section 361.5, subdivision (b)(6): (1) "infliction of severe physical harm" to J.P.; and (2) "that it would not benefit [J.P.] to pursue reunification services" with Mother. Mother contends the court skipped over the second requirement of subdivision (b)(6) and prematurely shifted the burden to Mother to prove services were in J.P.'s "best interests" under subdivision (c). She does not challenge the juvenile court's finding that the Agency proved the "severe physical harm" requirement.

Counsel for the Agency, Mother, and J.P. attended the bypass hearing. They discussed the respective burdens of the Agency and Mother under section 361.5 throughout the hearing. Mid-hearing, the juvenile court stopped argument and stated, "Well, it sounds like there's still a disagreement as to who has the burden and what finding the Court needs to make. So why don't we take a short recess and dial that in." When they went back on the record after the recess, the court stated, "We all got some time to look at the standard a little more closely." The court allowed the attorneys to continue arguing. When they rested, the court recited its factual findings at length, concluding the Agency had "proven the bypass grounds by clear and convincing evidence. That shifted the burden to the mother to prove by clear

8

and convincing evidence that reunification is in the child's best interest."

Section 361.5, subdivision (i) lists six factors the court must consider when determining whether services would benefit a minor. Four of these six factors—i.e., the "specific act or omission" that caused the severe physical harm, the "circumstances under which . . . the harm was inflicted," the "severity of the emotional trauma" the harm caused, and the likelihood the minor could be "safely returned to the care of the offending parent . . . within 12 months with no continuing supervision"—overlap factually with the Agency's burden to prove infliction of severe physical harm. The court made detailed factual findings relating to these factors before turning to Mother's obligation to prove services would be in J.P's "best interests" under subdivision (c). There is no indication the court relieved the Agency of its initial burden under subdivision (b)(6) to prove services would not benefit J.P., or conflated this finding with Mother's burden to prove reunification services were in J.P.'s best interests under subdivision (c).

The record contains substantial evidence that Mother meets the statutory criteria for bypassing services. (*In re Brian M.* (2000) 82 Cal.App.4th 1398, 1401.) "Statutory provisions enacted before [section 361.5, subdivision (b)(6)] had mandated reunification services in all cases for children more than five years of age except for a few very narrow circumstances." (*Jose O., supra*, 169 Cal.App.4th at p. 707.) "[S]ubdivision (b)(6) freed the dependency court to 'exercise discretion based on consideration of the individual facts . . . [of] a case, under less restrictive guidelines.'" (*Ibid.*, quoting Assem. Com. on Judiciary, Worksheet on Sen. Bill No. 1564 (1991-1992 Reg. Sess.) p. 2.) The Agency introduced ample evidence that Mother shot and

9

stabbed J.P.'s biological father in the presence of J.P.  Mother gave incomplete and conflicting accounts of the incident to police then requested the Agency not contact her while criminal charges were pending against her.  "Providing the court with discretion to not order services for a parent who has inflicted severe physical harm on the child by knifing to death the child's other parent in the child's presence supports the legislative purpose to allow the court to exercise its discretion based on consideration of the individual facts of a case." (*Jose O.*, at p. 707.)  While Mother may not have killed L.B. in front of J.P., she attempted to do so.  The record contains substantial evidence from which a reasonable trier of fact would find highly probable Mother committed a "torturous act . . . that would be reasonably understood to cause serious emotional damage" to him.  (§ 361.5, subd. (b)(6)(C).)

Mother likens her situation to *T.R.*  The juvenile court in that case bypassed reunification services for a father under section 361.5, subdivision (b)(6).  The Court of Appeal reversed the bypass order.  It noted the juvenile court judge had "simply said he was adopting the proposed findings in the department's report." (*T.R.*, *supra*, 87 Cal.App.5th at p. 1149.)  The judge "did not state for the record which bypass provision applied, mention the infliction of severe physical harm or identify any specific instances of it, or address whether [the minors] would benefit from attempting to reunify with their father." (*Ibid*.)  The Court of Appeal declined the agency's request to infer the required findings from the record for two reasons.  First, section 361.5, subdivision (k) requires the juvenile court to read the basis of its ruling into the record when bypassing services under subdivision (b)(6).  Second, the record contained no evidence of father physically injuring the children other than an incident described

10

in a previous section 300 petition involving only the mother. (*T.R.*, at pp. 1151-1152.)

We discern few parallels with *T.R.* in Mother's case. She has been held to answer charges of assault with a deadly weapon and child endangerment in connection with the events giving rise to these dependency proceedings. Eyewitness accounts of these events from four of her children and three first responders show L.B. suffered critical injuries during a violent confrontation with Mother in the presence of J.P. The juvenile court separately stated the basis of its findings as to section 361.5, subdivisions (b)(6) and (c) at the bypass hearing. Even assuming it did not, the evidentiary record is robust enough to infer its findings. (See *Jose O.*, *supra*, 169 Cal.App.4th at p. 708 ["Implicit in the court's denial of services is a finding that reunification services would not benefit [the minor]. A reviewing court may imply a finding if substantial evidence supports it."].)

DISPOSITION

The petition for extraordinary writ is denied.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:

GILBERT, P. J.

YEGAN, J.

11

Gilbert A. Romero, Judge
Superior Court County of Ventura
_____

Dependent Family Advocates, Rabiah A. Rahman, for Petitioner.

No appearance for Respondent.

Tiffany N. North, County Counsel, and Joseph J. Randazzo, Principal Assistant County Counsel, for Real Party in Interest.